THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* HARRY H. DENNISON, Appellant.

Third Department, November 24, 1954.

*David F. Lee, Jr., District Attorney,* for respondent.

*Joseph Pozefsky* for appellant.

BERGAN, J. P.   Defendant has been convicted of murder in the second degree committed by stabbing his wife.   The defense presented was temporary insanity induced when defendant saw his wife in the kitchen of his home in the arms of another man. Defendant contended that he then blacked out mentally and had no further recollection of events.   There is some proof that defendant had previously suffered from a nervous disorder.

The man defendant says he saw with his wife was also stabbed in the back by defendant and testified that this attack on him was made not in defendant's house but as he was leaving a car parked outside the house.   If this were true it would, of course, negative defendant's testimony he saw his wife with the man.

The place where that stabbing occurred was, therefore, a matter of prime importance in the case.   There were no other witnesses.   There was snow on the ground and the stabbed man said he was bleeding " pretty hard " after the assault.   There

is some negative proof from which the jury might find that no blood was seen in the snow in the area where the car of the stabbed man was parked at that time. There is other proof that there were " just a couple drops " of blood near a place where the car was later parked, but which place might or might not have been where it was parked at the time of the homicide.

Consideration of this important issue was effectively removed from the jury by the instruction of the court. " Referring to the drops of blood," said the court, " I can see no reason why the question whether or not there were two drops of blood on the snow has anything to do with the death of this woman and you should not be misled or sidetracked by unimportant facts which only bear upon the credibility of the witness." At another part of the charge the court observed that it could see " no reason " why the stabbing of the other man was " inside the house or outside the house is very material " except on credibility.

We do not read these statements from the charge in isolation. The charge as a whole, we think, must be read as suggesting judicial depreciation of the defense. Defendant was entitled to have his defense sent to the jury for a balanced evaluation without depreciation from the bench.

In reference to the contention of defendant that the killing was not committed with criminal intent, the court added in immediate context " and I say to you that crime is not committed by a mistake or unavoidable accident, but in the commission of any crime, there must be shown an intent to do the specific acts."

The form of contrast in which this language is framed seems to suggest that the Judge felt that the act in question could not be committed without intent, as the defendant argued. This reference to lack of intent was followed by the words " crime is not committed by mistake or unavoidable accident ". This in turn was followed almost immediately by the often quoted legal aphorism " a man is presumed to intend the natural consequences of his acts ". While some of these statements are literally correct the order of sequence in context leaves the literally correct words open to widely different interpretations as they would strike the ears of laymen sitting on the jury.

On the question of reasonable doubt as to intent " where the question of legal insanity is raised " the court duly noted that the people had the burden of proof, but added to the jury that " you may take into consideration * * * the presumption that all persons know * * * a knife driven into the heart and lung will produce death, and that this has been added to the

direct proof of doctors and psychiatrists, who have studied the matters of the mind and have given their opinions thereon.''

The court added on this general subject that '' if the testimony of the defendant's experts impresses you as reasonable and fair, then you should have a question you should consider along with the testimony of the experts for the prosecution * * *; place before you the vision of this defendant and the deceased as they must have stood there in that home on that night and he inflicted those fatal stab wounds and ran away to leave her to suffer or die.'' Apparently still dealing with the question of insanity the court added that '' you take all these into consideration as bearing upon his guilt as to whether or not an innocent man would do the things he did in this case.''

The charge contains a number of other statements of this kind. Besides this it contains allusions which could scarcely be expected to fail to appeal to the emotional sensibilities of the jury and to suggest, rather strongly, that there ought to be a conviction. Two such allusions are illustrative. There was proof that all three persons had been drinking together before the homicide. The court said: '' If he [defendant] had some plans whereby he was to serve this beer as a sort of last supper for these persons while he stabbed them in the back and then escaped to his home and conceal that fact, you may consider that as bearing upon his conduct after one person had escaped and would become a witness.''

Elsewhere in dealing with the hypothesis of insanity, the court instructed the jury to take into consideration on the question of insanity '' the fact that he was able to produce the knife from the sheath in which it should have been contained and quickly exterminate the deceased, the woman he professed to love, and then without knowing whether she was dead or alive leave her there alone in this house to suffer or die.''

In response to defendant's request to charge that where evidence in support of temporary insanity had been adduced, the people had the burden of showing sanity as part of their case, the court remarked: '' I charged that. That is technically true. We are not engaged in a hocus-pocus of words.'' It seems scarcely needed to remark that this could readily cast out of focus the jury's consideration of a defense which the defendant had a right to have considered.

We think the record would fully sustain the conviction of the defendant, but we think also defendant did not have the benefit of that wholly impartial submission of the case to the jury which the basic demands of due process of law assure him.

The judgment of conviction should be reversed, and a new trial ordered.

Coon, Halpern, Imrie and Zeller, JJ., concur.

Judgment of conviction reversed, on the law and facts, and a new trial ordered.